UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| MARK D., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:24-CV-166-CHB |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Claimant Mark D.'s Motion for Summary Judgment. [R. 7]. The Commissioner filed its brief in response, [R. 9]. The Claimant did not file a reply, and the time to do so has passed. Therefore, the matter is ripe and ready for review. For the reasons that follow, the Court will deny Claimant's Motion for Summary Judgment and affirm the final decision of the Commissioner.

I.  **BACKGROUND**

On July 25, 2023, Claimant Mark D. protectively filed an application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 1382c(a)(3) (the "Act"), [R. 6 (Administrative Record) (hereinafter "Administrative Transcript" or "Tr."), p. 15]; *see also id.* at 189–93, 237–45.[1] He alleges disability beginning on July 11, 2023, due to "heart attack, heart problems, PTSD, degenerative arthritis in back and knees, hearing loss, and depression." *Id.* at 70; *see also id.* at 15, 70–79, 101.

In the current challenge to the ALJ's decision, Claimant's application was denied initially

---

[1] The Court uses the page numbers assigned by the Court's electronic docketing system.

and upon reconsideration. *Id.* at 69–79, 80–90. At Claimant's request, a hearing was held August 7, 2024 before Administrative Law Judge Brian A. Oakes ("ALJ Oakes"). *Id.* at 43–68. With Claimant's consent, the hearing was held by telephone due to the Coronavirus pandemic. *Id.*; *see also id.* at 15 ("All participants attended the hearing by telephone."). The ALJ issued an unfavorable decision dated September 18, 2024, *id.* at 15–30, and the Appeals Council affirmed. *Id.* at 6–8.

In making his determination, ALJ Oakes applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim. 20 C.F.R. § 404.1520; *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010). In summary, the evaluation process proceeds as follows:

1. Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

2. Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

3. Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

4. Does the claimant have the [Residual Functional Capacity ("RFC")] to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

5. Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v.*

*Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Id.*; *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Jordan*, 548 F.3d at 423; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

First, ALJ Oakes found Claimant met "the insured status requirements of the Social Security Act through December 31, 2028," [Tr. 18], and did not engage in substantial gainful activity at any point since July 11, 2023, Claimant's alleged onset date. *Id.* Second, he found Claimant has the severe impairments of "disorders of the skeletal spine, trauma and stress related disorders, chronic ischemic heart disease with or without angina, osteoarthrosis and allied disorders, and anxiety and obsessive-compulsive disorders." *Id.* Third, ALJ Oakes found that none of Claimant's impairments or combination of impairments meet or medically equal the severity of a listed impairment under 20 C.F.R. Pt. 404, Subpt. P, App'x 1. *Id.*; *see also id.* at 18–21 (discussing Step 3). ALJ Oakes then determined Claimant has the residual functional capacity to perform "light work" as defined in 20 C.F.R. § 404.1567(b), with additional postural, environmental, and mental limitations. *Id.* at 21. In particular, ALJ Oakes determined:

> The claimant can occasionally climb ramps and stairs, as well as occasionally stoop, kneel, crouch, and crawl. He can never climb ladders, ropes, or scaffolds. The claimant must avoid all exposure to hazards such as unprotected heights and dangerous moving machinery. He can understand and remember simple instructions. The claimant can maintain attention, concentration, and pace to carry out simple tasks over 2 hour segments during an 8-hour workday. He can occasionally interact with co-workers, supervisors, and the public. The claimant can adapt to occasional workplace changes related to simple tasks.

*Id.*; *see also id.* at 21–28 (discussing RFC determination). Fourth, ALJ Oakes found Claimant has been "unable to perform any past relevant work." *Id.* at 28. Fifth and finally, considering Claimant's age, education, work experience, and RFC, ALJ Oakes determined "there are jobs that

exist in significant numbers in the national economy that the claimant can perform." *Id.* at 29.

Based on this evaluation, ALJ Oakes concluded that Claimant was not disabled, as defined in the Social Security Act, at any point since his alleged onset date through the date of the ALJ's decision. *Id.* at 30. Claimant sought administrative review of the decision, and the Appeals Council declined review on June 17, 2024. *Id.* at 6–8. At that point, ALJ Oakes's decision became the final decision of the Commissioner, and Claimant sought judicial review from this Court on November 12, 2024. [R. 1].

## II.   LEGAL STANDARD

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Colvin v. Barnhart*, 475 F.3d 727, 729–30 (6th Cir. 2007) (citations omitted). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court "must affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

## III.   ANALYSIS

### A.   RFC

Claimant generally challenges the ALJ's RFC determination, arguing that "this matter [should] be remanded for a proper [RFC determination] in regards to [Claimant's] complete physical and psychological conditions." [R. 7-1, p. 10]. In particular, Claimant takes issue with

how the ALJ evaluated the medical evidence and Claimant's subjective complaints concerning his lumbar spine, heart condition, and tiredness and weakness. *See id.* at 5–10. The Commissioner responds by arguing that Claimant has not shown that the ALJ's decision in unsupported by substantial evidence in the record, *see* [R. 9, pp. 8–12], and, "[t]o the extent Plaintiff argues that the evidence shows that he is physically more limited than the ALJ found, he is asking the Court to reweigh the evidence . . . , which the Court may not do." *Id.* at 12.

An ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c), 416.945(a)(1), 416.946(c). The ALJ bases his or her determination on all relevant evidence in the case record, including statements from medical sources. 20 C.F.R. §§ 404.1529, 416.929, 404.1545(a)(1)–(4). Thus, in making his or her determination of a claimant's RFC, an ALJ must necessarily evaluate the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1529(a), 416.929(a).

Claimant bears the burden of proof with respect to this step. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan*, 548 F.3d at 423. Claimant always retains the burden of proving lack of RFC. *Jordan*, 548 F.3d at 423; *Her*, 203 F.3d at 392.

### 1. Heart Condition

The Court first examines Claimant's arguments related to his heart condition and finds that the ALJ properly evaluated all the evidence in the record. Regarding Claimant's heart condition, ALJ Oakes considered the treatment records and Claimant's subjective complaints in making his RFC determination. While ALJ Oakes considered Claimant's treatment visits for his heart condition, *see id.* at 21–24, he also cited to more recent treatment records from late 2023 to 2024

that showed "regular" heart rate and rhythm and evidence that Claimant's "chest pain" was "not as severe as when he had his prior stent." *Id.* at 24; *see also id.* at 1279, 1362–63, 1365, 1370–73. Contrary to Claimant's assertion, *see* [R. 7-1, p. 8], his use of nitroglycerin daily was not uncontroverted in the record, as medical evidence from December 14, 2023 shows that Claimant "had not taken any nitroglycerin[,] although he carried it." [Tr. 24]; *see also id.* at 868 (describing how Claimant "has been doing fairly well he [sic] still has episodes of chest pains does not use any sublingual nitroglycerin pills pain usually resolves spontaneously"); *id.* at 1279 ("He carries sublingual NTG in his pocket but has not taken any."); *id.* at 1305 (same). Claimant's intermittent use of nitroglycerin, which ALJ Oakes considered, *see id.* at 24, certainly does not prove that ALJ Oakes did not consider his heart condition when crafting his RFC.

Based on the evaluation, and upon independent review of the record as a whole, the Court finds that substantial evidence supports ALJ Oakes's assessment of the medical evidence concerning Claimant's heart condition. Regarding his heart condition, there is substantial evidence in the record to support ALJ Oakes's RFC and that he did not err in not including greater restrictions. In July 2023, Claimant underwent an echocardiogram that "showed normal LV function" with "no wall motion abnormality" and "no significant valvular abnormalities." *Id.* at 859; *see also id.* at 862–63 (explaining findings of echocardiogram performed on July 27, 2023). The evidence also shows that Claimant's heart condition was stable in February 2024, *see id.* at 1372 (noting that, under "Assessment and Plan," Claimant's condition was "stable [with] no new chest pain"), and improved with medication in more recent treatment records from late 2023 to 2024, *id.* at 344, 860, 1279, 1365 ("He continues to experience occasional, brief episodes of chest pain, which is similar in nature but much less severe . . . and resolves spontaneously within minutes."); *id.* at 1362–63 ("He reports two episodes of left-sided chest pain since his last visit [in

December 2023], . . . [which] resolved after taking a single nitroglycerin."). As the Commissioner recites, "[i]mpairments that are controllable or amenable to treatment cannot support a finding of disability." [R. 9, p. 11 (quoting *Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010))]; *Gant*, 372 F. App'x at 585; *see Mitchell v. Comm'r of Soc. Sec.*, No. 6:13–CV–007–KKC, 2013 WL 4042920, at *3 (E.D. Ky. Aug. 8, 2013). Moreover, "the fact [that] [Claimant] is on medication does not alone suggest work-related limitations under the disability evaluation procedure." *Coleman v. Comm'r of Soc. Sec.*, No. 20-11568, 2021 WL 2560242, at *14 (E.D. Mich. June 7, 2021). He even denied having chest pain in a February 2024 visit. *See* [Tr. 1365, 1370]. The ALJ also mentioned Claimant's non-compliance with medical providers' instructions to stop smoking; in particular, ALJ Oakes considered that "[t]he claimant was repeatedly instructed to stop smoking cigarettes completely" but had not done so. *Id.* at 28. Indeed, the medical evidence is replete with advice from medical providers about the importance of smoking cessation for Claimant's health. *Id.* at 346, 348, 354, 476, 536, 539, 554, 633, 674, 714–15, 758, 888, 900, 907, 999, 1057, 1112, 1139, 1280, 1306. Ultimately, ALJ Oakes evaluated the medical evidence and determined that, while there was still evidence that Claimant suffered from a heart condition, as evidenced by ALJ Oakes's discussion of the Claimant's treatment history, *see id.* at 21–24, the medical evidence and Claimant's subjective complaints supported no more restriction than the "light work" accounted for in the RFC. *Id.* at 21.

### 2. Lumbar Spine

Turning to Claimant's allegation that ALJ Oakes did not consider the severity of his lumbar spine pain when fashioning the RFC, *see* [R. 7-1, pp. 8, 10], the Court finds that he did, in fact, properly consider it. Claimant suggests that ALJ Oakes did not consider the results of his May 8, 2023 MRI. *See id.* ALJ Oakes, however, explicitly detailed the results of the MRI when describing

the medical evidence used in determining Claimant's RFC, which revealed "disc space narrowing and disc dehydration" but no evidence of fractures or "abnormality of the spinal nerves." [Tr. 23]; *see also id.* at 543–44. Further, ALJ Oakes discussed how the state agency medical consultants, Dr. Daniel Meece and Dr. Rudolf Titanji, considered Claimant's MRI and reached the same conclusion about Claimant's RFC. *Id.* at 26 ("Evidence cited in support of their conclusions included . . . the claimant's lumbar MRI, and claimant's statements."); *see also id.* at 74–76, 86–87. ALJ Oakes outlined the findings of Dr. Meece and Dr. Titanji, including the following exertional limitations, and incorporated them into the RFC:

> Both State Agency medical consultants, Daniel Meece, M.D., and Rudolf Titanji, M.D., at the Initial and Reconsideration levels, respectively, found that the claimant was capable of work at the light exertional level, with sitting, standing, and walking for a total of 6 hours each in an 8-hour workday. The claimant could never climb ladders, ropes, and scaffolds. [He] could occasionally perform other postural activities, with the exception of balancing on an unlimited basis. Environmental limitations included avoiding all exposure to hazards. These opinions are persuasive. Although these doctors did not examine the claimant, they are trained in evaluating Social Security disability claims, reviewed the evidence that was made available to them at the Initial and Reconsideration levels of review, and made reasonable, well-supported conclusions based on that evidence. Evidence cited in support of their conclusions included the consultative examination performed by APRN Kelsey, cardiology record, the claimant's lumbar MRI, and claimant's statements (Exhibits 2A, 4A, 17F).

*Id.* at 26; *see also id.* at 74–76, 86–87. The ALJ also considered the medical opinion evidence of Jesslyn Kelsey, APRN. While he did not find her opinion entirely persuasive, which is not at issue here, he considered Kelsey's physical examination findings that Claimant's "gait was normal. He had full strength in all of his extremities. He could squat halfway, reporting that he had to keep his right knee straight. He had no difficulty getting on and off the examination table independently." *Id.* at 25–26; *see also id.* at 1267–71. Further, Claimant reported that "he did not require assistance with his activities of daily living." *Id.* at 26. While Claimant may disagree with the RFC determination that ALJ Oakes made, this does not show that ALJ Oakes did not consider the

medical evidence concerning his lumbar spine condition, specifically the MRI, when determining Claimant's RFC.

The medical evidence from both before and after Claimant's May 8, 2023 MRI demonstrates normal findings regarding his lumbar spine, *see id.* at 532 (finding, on October 19, 2022, "thoracic and lumbar spine normal to inspection"); *id.* at 552 (describing, on July 11, 2023, "thoracic and lumbar spine normal to inspection" and "cervical [spine] [range of motion] normal"); *id.* at 564 (same); *id.* at 574 (same); *id.* at 589 (same, on November 19, 2022). Further, as the Commissioner points out, Claimant "did not report any back pain to his primary care provider" at his February 2024 visit, [R. 9, p. 10]; *see also* [Tr. 1370–73 ("[H]e has no other complaints with today[']s appointment.")], and the record contains no evidence that he was prescribed medication for his low back pain. Claimant's daily activities also support ALJ Oakes's determination of Claimant's RFC, which is discussed in more detail in the next section. *See infra* Section III.B. Ultimately, the Claimant has not put forward evidence in his brief to show how ALJ Oakes's determination was not supported by substantial evidence in the record, which is his burden to prove. *Jordan*, 548 F.3d at 423; *Her*, 203 F.3d at 392. Based on the reasons above, the Court finds that there is substantial evidence to support ALJ Oakes's RFC determination.

   **B.**  **Subjective Complaints**

Claimant makes a related assertion about his claims regarding "being tired and weak," *see* [R. 7-1, p. 8], alleging that ALJ Oakes did not consider these subjective complaints when determining his RFC. *Id.*

In evaluating a claimant's subjective complaints, the ALJ considers objective medical evidence, as well as other non-exhaustive factors such as evidence of daily activities, the frequency and intensity of pain, medication taken and any resulting side effects, and any other measures taken

to alleviate the pain. *See* 20 C.F.R. §§ 404.1529(c)(2)–(3), 416.929(c)(2)–(3). A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled. *See* 20 C.F.R. § 404.1529(a); *Walters*, 127 F.3d at 531; *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (discussing the need for objective medical evidence); *see also Vickers v. Comm'r of Soc. Sec.*, No. 20-1935, 2021 WL 4468414, at *5 (6th Cir. July 12, 2021) ("Subjective complaints, even if internally consistent in the record, shall 'not alone be conclusive evidence of disability.'" (quoting 42 U.S.C. § 423(d)(5)(A))). The Sixth Circuit's guidelines for evaluating a claimant's subjective assertions of disabling pain are set forth in *Duncan*:

> First, [the Court] examine[s] whether there is objective medical evidence of an underlying medical condition. If there is, [the Court] then examine[s]: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

801 F.2d at 853. Still, "[e]ven when the record contains this [objective medical] evidence, the ALJ may also consider the credibility of the claimant's subjective complaints." *Steagall v. Comm'r of Soc. Sec.*, 596 F. App'x 377, 381 (6th Cir. 2015). If the ALJ determines that the subjective complaints are not consistent with the objective medical evidence, he may "discount a claimant's credibility." *Id.* Further, "great weight" is afforded to the ALJ's credibility determination. *Id.* (quoting *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)).

Although Claimant puts forward complaints about "being tired and weak," [R. 7-1, p. 8], his statements alone are not enough to show that he is disabled. Here, as ALJ Oakes explained,

> the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [his] decision.

- 10 -

[Tr. 22]. ALJ Oakes found that the record evidence—and Claimant's own testimony about his daily activities—supported Claimant living a "fairly active lifestyle," including shopping, "straighten[ing] up the house," and "go[ing] outside every day." *Id.* at 24–25; *see also id.* at 55, 60–61, 62–63, 239–46, 292–99, 1262–63. In particular, ALJ Oakes noted that

> The claimant's activities of daily living are inconsistent with his allegations of such significant functional limitations but are fully consistent with the residual functional capacity described above. The evidence of record indicates that despite the claimant's complaints and allegations, he has admitted that he was able to bathe and dress himself, use the microwave, straighten up the house, wash dishes, watch television, read, visit his mother, manage his finances, drive, wash laundry, shop, talk on the telephone call, send and receive text messages, manage his own medical care, and go outside every day, activities, which generally reveal functioning at a greater level than alleged. Of note, his descriptions of his daily activities are representative of a fairly active lifestyle and are not indicative of a significant restriction of activities or constriction of interests.

*Id.* at 24–25 (internal citations omitted). Claimant's instant motion points to no specific medical evidence of tiredness and weakness that ALJ Oakes did not consider, outside of his own subjective complaints. *See generally* [R. 7-1]. After examining the record as a whole, ALJ Oakes determined that Claimant's daily activities were not consistent with his subjective complaints, but they were consistent with the fashioned RFC. [Tr. 24 ("The claimant's activities of daily living are inconsistent with his allegations of such significant functional limitations but are fully consistent with the residual function capacity described above.")]. Therefore, the Court finds no error in the ALJ's evaluation of Claimant's subjective complaints.

### C. Medical Opinion Evidence

The Court next turns to Claimant's challenge concerning ALJ Oakes's consideration of the relevant medical evidence. Claimant challenges how the ALJ evaluated the medical opinion

- 11 -

evidence of Lora Helton, M.Ed., LPCC-S concerning Claimant's mental abilities.[2] [R. 7-1, pp. 8–11]. Specifically, Claimant argues that ALJ Oakes (1) did not afford adequate deference to Helton as Claimant's "treating physician," (2) "failed to articulate . . . how [he] considered the factors of supportability and consistency," pursuant to 20 C.F.R. 404.1520c, when evaluating Helton's opinion, and (3) adopted an RFC that "clearly conflicts with" Helton's opinion, "and [he] has failed to explain why [ ] Helton's opinion was not adopted as required[,] pursuant to the Social Security ruling 96-8P [sic]." *Id.* at 9. In response, the Commissioner claims that Claimant's reliance on the "treating physician" rule is misplaced, as that rule "does not apply in this case," *see* [R. 9, p. 4], and Claimant did not adequately explain his challenge to ALJ Oakes's evaluation of the supportability and consistency of Helton's opinion, but regardless, ALJ Oakes "properly discussed" both of these factors when evaluating Helton's opinion, and the ALJ's decision is supported by substantial evidence, *id.* at 5.

First, concerning the proper standard for evaluating Helton's opinion, the new regulations for evaluating medical opinions are applicable here since Claimant's claim was filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c. The previous regulations required a treating physician's opinion be given controlling weight if it was well-supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with the other substantial evidence in the case record. *Id.* § 404. 1527(c)(2). Under the new regulations, however, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own]

---

[2] Claimant also suggests that the ALJ "did not adequately address the opinions of . . . the other treating physicians," *see* [R. 7-1, pp. 9–10], but does not at any point identify which providers were not evaluated in the ALJ's decision. Therefore, the Court will not address this claim concerning unidentified providers and deems it waived. *See United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) ("'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997))); *see also Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (observing that the Court "consider[s] issues not fully developed and argued to be waived").

medical sources." *Id.* § 404.1520c(a). An administrative law judge must consider supportability, consistency, relationship with the claimant, specialization, and other factors when determining the persuasiveness of an opinion. *Id.* § 404.1520c(c)(1)–(5). But the administrative law judge need only explain how she considered the supportability and consistency factors, which are the two most important in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. *Id.* § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented, the more persuasive the medical opinion(s) will be. *Id.* § 404.1520c(c)(1). The more consistent the medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive it will be. *Id.* § 404.1520c(c)(2). "[T]he measuring stick for an 'adequate discussion' [of these factors] is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of his finding as to whether the particular medical opinion was supported by substantial evidence." *Terhune v. Kijakazi*, No. 3:21-37-KKC, 2022 WL 2910002, at *3 (E.D. Ky. July 22, 2022) (citations omitted).

In Helton's August 2023 "Medical Assessment of Ability to Do Work-Related Activities (Mental)," she found that Claimant had "poor" to no ability to perform any of the listed activities except for "fair" ability to "[u]se judgment." [Tr. 1375–76]. Specifically, Helton opined that Claimant had no ability to deal with work-related stress and a poor ability to follow work rules, interact with coworkers and supervisors, deal with the public, function independently, and maintain concentration. *Id.* at 1375. Helton's assessment included that Claimant "[h]as several mental health issues that impact his mental health" and stated that Claimant "has poor memory skills, [is] easily agi[t]ated[,] and has poor to no thought organization skills." *Id.* at 1376.

In considering Helton's opinion, ALJ Oakes correctly summarized her findings and

determined they were not persuasive in light of treatment records and exam findings, including Helton's own treatment notes. Specifically, the ALJ provided the following:

> On August 6, 2024, Lora Helton, M.Ed., LPCC-S, completed a Medical Assessment of Ability To Do Work-Related Activities (Mental), reported that the claimant had severe and chronic PTSD, high levels of anxiety, and mood swings. His ability to make occupational adjustment such as following work rules, relating to coworkers, dealing with the public, interacting with supervisors, functioning independently, and maintaining concentration/attention was poor. He had a fair ability to use judgment. The claimant was unable to deal with work stresses and became easily agitated. Ms. Helton reported the claimant had a poor ability to understand, remember, and carry even simple job instructions. She stated he had a poor to no thought content organization skills. He had a poor ability to maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. However, the claimant could manage his funds. Ms. Helton's opinion is not persuasive. The extent of the limitations indicated are inconsistent with the treatment records and exam findings, showing some abnormalities, but not to the extent indicated. VA medical records dated July 26, 2023, describe the claimant as having a normal mood and affect. He was described as being well groomed. (Exhibits 6F/10, 23F).

*Id.* at 28.

The Court finds that the ALJ sufficiently articulated the supportability and consistency of Helton's opinion. "'A reviewing court evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion.'" *Wroblesky v. Comm'r of Soc. Sec.*, No. 1:23-cv-232-JEG, 2023 WL 7131807, at *9 (N.D. Ohio Oct. 30, 2023) (quoting *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261-JDG, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020)). This means that the ALJ must "articulate the supportability and consistency of each medical opinion," *Newman v. Kijakazi*, No. 5:22-59-KKC, 2023 WL 2700700, at *2 (E.D. Ky. Mar. 29, 2023) (citations omitted), but he or she "is not required to specifically use the terms supportability or consistency in [the] analysis." *Id.* (internal quotation marks omitted) (quoting *Childers v. Kijakazi*, Civil No. 5:21-285-JMH, 2022 WL 2706150, at *5 (E.D. Ky. July 12, 2022)); *see also Fisk v. O'Malley*, No. 5:23-CV-00261-MAS, 2024 WL 4194307, at *4 (E.D.

Ky. Sept. 13, 2024) ("The ALJ describes his consistency findings but does not necessarily use those words. Such specificity or magical incantation of words is not required.").

In this case, the ALJ did not use the word "supportability," but he adequately articulated why Helton's opinion was not supported by her own treatment notes. ALJ Oakes explained that Helton's assessment provided that Claimant "had a poor ability to understand, remember, and carry even simple job instructions[,] . . . poor to no thought content organization skills[,] . . . [and] a poor ability to maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability." [Tr. 28]. When compared to Helton's treatment records, however, he determined that these assessment findings were inconsistent:

> The claimant attended 3 counseling sessions with Lora Helton, M.Ed., LPCC-S, on July 10, 2024, July 22, 2024, and August 7, 2024, respectively. The claimant's mental status examination was unremarkable on July 22, 2024. Ms. Helton describe[s] the claimant's insight and judgment as excellent. His thought process was unremarkable. His functional status was intact. His dress and general appearance were appropriate. His attention/concentration were good. The claimant's mood was euthymic, and his affect was congruent (Exhibit 24F).

*Id.* at 24. Ultimately, ALJ Oakes articulated how Helton's opinion was not supported by the treatment notes, or by other parts of her opinion. *See id.* at 28. As ALJ Oakes noted, Helton's treatment records from July 22, 2024, just two weeks before she authored her opinion, described his "judgment as excellent," "concentration [as] good," and "thought process [as] unremarkable," [Tr. 24]; *see* [Tr. 1382], but her opinion dated August 6, 2024 described many of his abilities to perform activities using these skills as "poor" in her ultimate assessment. *Id.* at 28, 1375–76, 1382; *see Peters v. O'Malley*, No. 6:24-CV-11-REW, 2024 WL 5077599, at *4–5 (E.D. Ky. Dec. 10, 2024) (explaining that the medical provider's "opinions suffer[ed] from internal inconsistencies," which was "a valid reason for finding the opinion unsupported," as "[t]hese internal contradictions between assessment and opinion plausibly go to the heart of supportability"). This was sufficient

- 15 -

to explain how ALJ Oakes considered the supportability and consistency of Helton's opinion and found her opinion unpersuasive. *See Wroblesky*, 2023 WL 7131807, at *10 (determining that the ALJ had discussed the supportability of a provider's opinion by "reviewing [the provider's] findings," which showed "little support . . . for the opined limitations" and was therefore inconsistent with the provider's ultimate opinion on the claimant's limitations).

In addition to the internal inconsistencies between Helton's opinion and her treatment notes, throughout his decision ALJ Oakes also cited to treatment records and exam findings, including Department of Veterans Affairs ("VA") medical records, that reflect her opinion was inconsistent with and unsupported by the other medical evidence. *See* [Tr. 28]. These records from July 26, 2023 "describe[d] the claimant as having a normal mood and affect" and "being well groomed." *Id.*; *see also id.* at 616. The VA records appeared to match Helton's treatment notes from July 22, 2024, which described Claimant's "euthymic" mood, "congruent" affect, and "appropriate" dress and general appearance, *compare id.*, *with id.* at 1382, but were inconsistent with her ultimate findings as to Claimant's abilities, which she deemed to be overwhelmingly "poor." *Id.* at 28 ("The extent of the limitations indicated are inconsistent with the treatment records and exam findings, showing some abnormalities, but not to the extent indicated."); *id.* at 1375–76; *see also Masterson v. Comm'r of Soc. Sec.*, No. 24-5512, 2025 WL 317501, at *1 (6th Cir. 2025) ("Given all these contradictions, a reasonable mind could find the opinions from [the medical providers] unpersuasive, which means that substantial evidence exists to support the ALJ's decision to reject their opinions." (internal quotation marks and citations omitted)); *Smith v. O'Malley*, No. 5:23-CV-00063-MAS, 2024 WL 1259445, at *6 (E.D. Ky. Mar. 25, 2024) (explaining that, even if "the other treatment notes reflecting [the claimant's] mood or other symptoms may have been consistent with parts of [the provider's] report, the ALJ was free to find

that there was treatment that was inconsistent as well and discount the persuasiveness of [the provider's] opinion accordingly. For the Court to find otherwise would require the Court to impermissibly reweigh the evidence."). While Claimant may believe that the ALJ should have specifically discussed all of the medical evidence when evaluating the supportability and consistency of Helton's opinion, "[t]he ALJ's explanation as to persuasiveness 'does not need to be lengthy,'" *Newman*, 2023 WL 2700700, at *2 (quoting *Terhune*, 2022 WL 2910002, at *4), "[a]nd there is no requirement that an ALJ discuss each limitation from an opinion that he adopts, or fails to adopt, when he has rejected or adopted the opinion on broader grounds," such as here where the ALJ determined that Helton's opinion was ultimately unpersuasive. *Tyrian C. v. Kijakazi*, No. 3:21-CV-00568-RGJ, 2023 WL 310179, at *7 (W.D. Ky. Jan. 3, 2023), *report and recommendation adopted*, 2023 WL 258357 (W.D. Ky. Jan. 18, 2023) (citation omitted). Indeed, he "is not required to mention every piece of evidence but must [only] provide an accurate and logical bridge between the evidence and the conclusion that the claimant is not disabled[.]" *Fisk*, 2024 WL 4194307, at *4 (alterations in original) (internal quotation marks omitted) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). Moreover, the Court examines the ALJ's consideration of the evidence at step 4 as a whole. *Tyrian C.*, 2023 WL 310179, at *6 (discussing how the ALJ's evaluation of the opinion evidence elsewhere in the RFC determination is sufficient). Here, for the reasons outlined above, the Court finds that the ALJ sufficiently articulated the factors of supportability and consistency when evaluating Helton's medical opinion.

The Court finds that substantial evidence supports ALJ Oakes's determination that Helton's opinion was unpersuasive. As the Court previously observed, Claimant appears to rely on previous regulations when he argues about the deference to be afforded to his treating physician. He claims that ALJ Oakes should have assigned "greater weight" to Helton's opinion, and that

ALJ Oakes should have more thoroughly explained his reasoning for "rejecting the treating source[']s opinion." [R. 7-1, p. 9]. But the "treating physician rule," as the Commissioner points out, *see* [R. 9, p. 5], is no longer used when evaluating disability claims. *See Masterson*, 2025 WL 317501, at *1 n.1 ("In 2017, the Social Security Administration eliminated its so-called 'treating physician' rule, which required ALJ's [sic] to give more weight to a claimant's own healthcare providers. Now, under the new rule, ALJ's must evaluate all medical opinions under the same factors." (citing 20 C.F.R. §§ 404.1527, 404.1520c)); *see also* 20 C.F.R. § 404.1520c; *Snyder v. Comm'r of Soc. Sec.*, No. 22-5948, 2023 WL 3673265, at *5 (6th Cir. May 26, 2023) (applying the "treating physician rule" to a claim filed prior to the regulation's amendment but noting that "the regulations were amended in March 2017 to eliminate the" rule under 20 C.F.R. § 404.1520c).

Regardless, Claimant's argument as to the weight ALJ Oakes *should* have afforded for Helton's opinion does nothing to point out deficiencies in ALJ Oakes's analysis of Helton's opinion. Indeed, as ALJ Oakes noted throughout his order, *see* [Tr. 21–28], while the record demonstrates that Claimant has reported to providers about his mental health, *id.* at 868, 1261–65, 1380–86, the medical record shows many occasions where Claimant's mental health findings appeared unremarkable—and even cooperative—including in more recent examinations. *Id.* at 344 (finding, on October 5, 2022, Claimant's "mental status grossly normal"); *id.* at 350 (noting, on October 5, 2022, that Claimant "[d]enies confusion, [ ] depression and [ ] memory loss"); *id.* at 531 (describing, on October 19, 2022, Claimant as "cooperative, healthy appearing, comfortable, [in] no acute distress, well developed and well groomed"); *id.* at 755 (noting that, on December 20, 2021, Claimant "[d]enies mood changes" and "depression"); *id.* at 907 (finding, on August 30, 2023, that Claimant had "[n]ormal affect" and "[a]nswers questions appropriately"); *id.* at 1263

(describing, on December 6, 2023, adequate findings as to Claimant's functioning by Dr. Emily Skaggs); *id.* at 1274 (noting, on December 14, 2023, that Claimant was "pleasant," with "appropriate mood and affect"); *id.* at 1367 (finding, on February 9, 2024, that Claimant had "normal mood/affect" and was "well-groomed").

Further, the other medical opinion evidence, on which ALJ Oakes relied, demonstrates that Claimant had some limitations, but not to the extent advocated by Helton. For instance, Dr. Skaggs opined that, with Claimant continuing to receive mental health treatment, Claimant's "prognosis for his improvement is fair," *see id.* at 1265, and she found slight-to-moderate limitations in his functional capabilities. *Id.* at 1264. ALJ Oakes explicitly mentioned the other medical opinion evidence concerning Claimant's mental health and adopted an RFC that accounted for all of the restrictions recommended by Dr. Skaggs. *See id.* at 21, 24–28, 1264. Additionally, ALJ Oakes thoroughly detailed the medical opinion evidence elsewhere in his RFC decision, *see id.* at 24–28; *see also Tyrian C.*, 2023 WL 310179, at *6 (discussing how ALJ's evaluation of the opinion evidence elsewhere in the RFC determination is sufficient). Overall, for the reasons explained, ALJ Oakes's evaluation of Helton's opinion and his ultimate RFC determination, which included mental limitations, is supported by substantial evidence.

As a closing note, an ALJ's decision may be supported by substantial evidence "even if that evidence could support a decision the other way." *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). While there might be evidence in the record that could support a contrary conclusion, it is clear ALJ Oakes thoroughly considered all evidence of record and applied the correct legal standards, and the Court finds no error in his decision.

### IV.  CONCLUSION

For all these reasons, the Court will deny Claimant's Motion for Summary Judgment and

affirm the Commissioner's decision. Accordingly, **IT IS HEREBY ORDERED** as follows:

1. Claimant Mark D.'s Motion for Summary Judgment, [**R. 7**], is **DENIED**.

2. The final decision of the Commissioner is **AFFIRMED**.

3. A separate Judgment will be entered consistent with this Order.

This the 11th day of June, 2025.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY